STEPHEN JACKSON ET ALS. v. E. A. DESLONDE ET ALS.

(Case No. 4157.)

1. PLEADING — SUPPLEMENTAL PETITION.— It is not error to overrule exceptions to a supplemental petition where the facts therein alleged are in the nature of a replication to the answer, or the title set up in the answer by the defendant.

2. SECONDARY EVIDENCE — LAYING PREDICATE.— In the predicate made for the admission of secondary evidence, the quantity of preliminary proof is for the judge trying the cause to pass upon, and its sufficiency is largely within his discretion. Unless it be clearly shown that the court erred in so admitting secondary evidence, where there is *prima facie* proof as to search and inquiry of the proper persons and at the proper places shown in the preliminary testimony, the act of the judge will not be reversed. See this case for proof held sufficient. White *v.* Barry, 27 Tex., 50; Wharton on Ev., 141; Bailey *v.* McMickle, 9 Cal., 430; Diehl *v.* Ewing, 65 Pa. St., 326.

3. EVIDENCE — DECLARATIONS OF PERSONS IN POSSESSION.— Declarations of persons in possession of land, explanatory of the character of their possession, are admissible in evidence. 1 Greenl. Ev., sec. 109; Wharton on Ev., 1156; Abbott's Trial Ev., 711.

4. CHARGE OF THE COURT — PRESUMPTION.— To instruct the jury, if they "believe from the evidence that there were in existence, more than thirty years ago, deeds from S. C. Robertson to Niles F. Smith, and from Smith to John Darrington, to the land described in the petition, and you further believe that Darrington claimed said land and held possession thereof, either by himself or by a tenant, under said deeds, and paid taxes on said land, then you are authorized to presume that said deeds were executed by said Robertson and Smith," is not error. Carver v. Jackson, 4 Peters, 83; Crane v. Lessee of Morris & Astor, 6 Pet., 610; Deery v. Crain, 6 Wallace, 805.

5. POSSESSION, PRIMA FACIE EVIDENCE OF.— Payment of taxes is *prima facie* evidence of possession. Williams v. Hillegas, 5 Pa. St., 492.

6. ASKING INSTRUCTIONS.— Where it would be proper to give a charge if asked, mere omission of the court to do so is not error.

7. STALE DEMAND — CHARGE OF THE COURT.— Possession of land with right of possession, and of property, constitutes a title which mere lapse of time cannot destroy; and to charge the jury that, "If Farley, without having been in possession of the land in suit as many as three years, did, on or about the years 1857 or 1858, lose the possession, and if he has not since held the possession of the same, or paid taxes on said land or claimed title thereto until the institution of this suit, but has openly disclaimed having title; and if Darrington, claiming the south half of said league No. 2, under deeds from Robertson to Smith and from Smith to Darrington, did, on or about the year 1853, cause said south half to be surveyed and the lines around it marked, and if he, and plaintiffs since his death, have paid taxes thereon, and if, since about the year 1857 or 1858, said land has been in the possession of a tenant or tenants notoriously claiming to hold under and for Darrington, then Farley's bond from Robertson, dated June 27, 1842, and read in evidence, has become a stale demand and barred by lapse of time, and you will find in that case for the plaintiff," is erroneous.

8. PRACTICE — ADMITTING IMPROPER EVIDENCE.— Where improper evidence has been admitted in the trial of a cause, and it cannot be known that its admission was not injurious to the party complaining, the judgment will be reversed.

APPEAL from Milam. Tried below before the Hon. Spencer Ford.

August 15, 1876, E. A. Deslonde, Maria D. Deslonde, Louisa Douglass and Robert Darrington brought an action of trespass to try title against Stephen Jackson and M. Farley,

for two thousand two hundred and twenty-two acres of land, "part of a grant of four premium leagues granted by the government of Coahuila and Texas to Sterling C. Robertson, and being the lower or south half of premium league No. 2, from the mouth of Elm creek, and bounded on the north by the Rios league, on the east by premium league No. 1 of said four leagues, on the south by James Reed and Sarah Wilhelm leagues, and on the west by the balance of said premium leagues."

The defendant, October 5, 1879, filed amended answer substantially as follows:

"And for further answer in this behalf, the defendant M. Farley says that he is the *bona fide* and legal owner of the following described tract of land, to wit: A part of the Sterling C. Robertson four-league survey, situated on Elm creek, in Milam county, Texas, and described as follows: Beginning in the east line of the James Reed league of land, south nineteen degrees west one thousand one hundred and eighty-two varas from James Reed's northeast corner; thence north nineteen degrees east to a stake in the northern boundary line of said four-league survey; thence south seventy-one degrees east with said boundary line far enough to inclose one thousand six hundred and eighty-three acres; thence south nineteen degrees west to a stake in the southern boundary line of said four-league survey; thence with said boundary line to the beginning, containing one thousand six hundred and eighty-three acres of land. That on or about the 27th day of January, 1842, S. C. Robertson executed to Farley & Jewett a bond for title, with power of selection, for a league of land; that on the 12th day of February, 1848, Farley & Jewett, by virtue of said bond, selected the land above described as a part of said league. That on the —— day of ——, 1855, Farley & Jewett put Thomas Compton in possession of the land as their tenant, to hold for them. That on the —— day of ——, 1858, Jewett sold his interest in said land to Farley, and Compton continued to hold possession for Farley until the death of Compton in 1862. That at the time of the institution of

this suit Stephen Jackson was in possession of said land as tenant for Farley, holding the same for him. All of which defendants are ready to verify," etc:

October 27, 1879, plaintiffs filed their first supplemental petition, replying to the matters in the amended answer substantially as follows: "Plaintiffs say that the defendant, M. Farley, claims a part of the land described in plaintiffs' petition and in defendants' answer, by virtue of and under a bond for title, or instrument of writing, from Sterling C. Robertson to H. J. Jewett and M. Farley, which said instrument is dated January, 1842; and plaintiffs also derive their title from Sterling C. Robertson through deeds from said Robertson to Niles F. Smith, and from Niles F. Smith to John Darrington, the first dated February 8, 1838, and the second February 10, 1840. Plaintiffs say that said instrument of writing from S. C. Robertson to Farley & Jewett was an executory contract in consideration of professional services to be performed by said Farley & Jewett; and plaintiffs say that Farley & Jewett never performed said services, whereby the consideration of said bond has failed; wherefore defendants ought not to recover."

Plaintiffs further say that, "if said Farley & Jewett ever had any right under said bond or deed, then they aver that said claim is now, and was long before the institution of this suit, a stale demand and barred by a lapse of time, and cannot be enforced against these plaintiffs, holding under said Robertson."

And plaintiffs further say "that defendant Farley ought not to maintain said defense under said bond or instrument, because they say that on the —— day of March, 1859, the said Farley, acting by and through his agent, H. J. Jewett, and the said Jewett, acting for himself and E. S. C. Robertson, executor and legatee of the estate of S. C. Robertson, deceased, entered into a new contract in writing, by which the said bond or deed from S. C. Robertson was canceled, and a new contract substituted in its place, all of which plaintiffs are ready to verify.

"Plaintiffs further say that on the 20th day of April,

1853, their ancestor, John Darrington, proceeded to more fully designate and mark out the half league conveyed by S. C. Robertson to N. F. Smith, and by N. F. Smith to John Darrington, and to that end employed the services of George Green, a practical surveyor of Milam county, who, on said day, surveyed and more fully designated the said half league as described in plaintiffs' amended petition, by making lines and corners, which designation and survey has ever since been respected and admitted to be correct by said E. S. C. Robertson, executor, legatee, etc."

To this supplemental petition defendants excepted generally and specially.

The exceptions of defendants were overruled.

Pending the suit, Annie Lindsay, Thos. Lindsay and Mary Whittington, as heirs of Compton, intervened, claiming six hundred and forty acres, part of the land in controversy. Before the trial plaintiffs admitted the rights of the intervenors to the extent of one hundred acres.

Verdict and judgment were for the plaintiffs, and motion for new trial being overruled, defendants appealed.

*Hamman & Adams*, for appellants.

*H. D. Prendergast* and *N. P. Garrett*, for appellees.

A. S. Walker, J.— There are sixty-three assignments of error, many of which are subdivided into several points.

But a small number are noticed in the brief of the appellants.

Those discussed are as follows, and will only be noticed:

2d. The court erred in overruling defendants' demurrer to plaintiffs' first supplemental petition.

3d. In overruling defendants' objections to the sufficiency of the affidavits of Maria D. Deslonde and H. D. Prendergast, of the loss of deeds from Robertson to Smith and from Smith to Darrington.

52d. The court erred in overruling defendants' objections to the testimony of E. S. C. Robertson, of a pretended compromise between said Robertson and Henry J. Jewett

and the defendant M. Farley, of the title to the one thousand six hundred and eighty-three acres of land on Elm creek, selected by Farley and Jewett.

26th, 29th, 32d, 38th and 51st. The testimony of the witnesses Crout, Chaudoin, Prendergast, Shirley and Reece was irrelevant, incompetent, and calculated to mislead and prejudice the jury; and the court erred in admitting it over defendants' objections.

55th, 56th and 59th relate to instructions given by the court to the jury.

The alleged errors so discussed will be noticed. In connection with each will be given a sufficiently full statement from the record to show the facts and points of law upon which the opinion is formed.

1. The facts alleged in the supplemental petition, being in replication to the answer, or to the title set up in the answer, by the defendants, was not improperly pleaded. It may have been necessary to the validity of the plaintiffs' title that the alleged title of the defendants be avoided.

There was no error in overruling the exceptions to the said supplemental petition. At most it was immaterial.

2. The predicate made for the admission of secondary evidence of the deeds from the grantee to Niles F. Smith, and from him to John Darrington, ancestor of plaintiffs, is as follows:

" Before me, the undersigned authority, personally came Maria D. Deslonde, one of the plaintiffs in the above entitled cause, and, after being duly sworn, on oath says that the original deed from S. C. Robertson to Niles F. Smith, and the deed from Niles F. Smith to John Darrington, for the land in controversy, are lost; and affiant says that she has made diligent search for said deeds, and affiant knows that the deeds are not in the possession of any of the plaintiffs, Maria D. Deslonde, Louisa Douglass or Robert Darrington. And affiant says that both of said deeds, as she is informed and believes, are recorded in Milam county, Texas,

and the deed from Niles F. Smith to John Darrington is recorded in Robertson county.

"MARIA DARRINGTON DESLONDE."

"Subscribed and sworn to before me at the city of New Orleans, Louisiana, on the 6th day of April, A. D. 1877.

[SEAL]                          "ROBERT J. KER,

"United States Commissioner for Fifth District of Louisiana, and Fifth Judicial Circuit, United States."

"Also, before me, the undersigned authority, personally came H. D. Prendergast, attorney for plaintiffs in the above entitled cause, and, after being duly sworn, on oath says that the original deed from Sterling C. Robertson to Niles F. Smith, for the land in controversy, dated February 8, 1838, and the original deed from said Smith to John Darrington, dated February 10, 1840, for the land described in plaintiffs' petition, are lost; and affiant says that he has made diligent search for said deeds, by applying to the plaintiffs, and is informed by the plaintiffs that they have not the deeds, and one of the plaintiffs, Mrs. Maria D. Deslonde, has made oath before a United States commissioner that she has not the said deeds, and she knows that the other plaintiffs have not got them, and that they are lost, which said affidavit is herewith exhibited to the court; and affiant says that he has made diligent search for said deeds in all places where he thought it possible they could be found. He has applied to the representatives of J. De Cordova, of A. F. James and Darnell, as far he could find them, for information as to said deeds. Said parties were the agents of John Darrington at different times in Texas, and are all now dead. And affiant further says that he has offered to the administrator of Cordova's estate a reward of $50 if he would find said deed. Affiant says that the deeds above described were recorded in Milam county — the first one, as affiant believes, about the latter part of the year 1838, and the other in 1847. And affiant says that the deed from Niles F. Smith to John Darrington is also recorded in Robertson county, and a certified copy is herewith shown to the court."

Without extended discussion it would seem that Prendergast's affidavit was a compliance in form with the rule given in White v. Barry, 27 Tex., 50, and there held sufficient. The quantity of preliminary proof to admit the secondary evidence is for the judge below. In the case cited proof of inquiry of a trustee and of the beneficiary in the deed, and that they had stated to the attorney making the inquiries that they did not know where it was, was held sufficient to admit depositions proving execution and contents of the deed of trust. The affidavits of the trustee, nor of the beneficiary to whom the deed had been delivered, were had.

In this case at bar, the attorney for plaintiff testified to inquiry of the plaintiffs, the heirs of Darrington (supplemented by the irregular affidavit of one of the plaintiffs to same inquiry), and that J. De Cordova, in whose hands the deed was last seen, was dead, and search and inquiry of his administrator, as well as inquiry from others named who had been Darrington's agents.

The sufficiency of the preliminary proofs is much in the discretion of the judge trying the case. Wharton on Ev., pp. 141, 142, 147; Bailey v. McMickle, 9 Cal., 430. Unless it be clearly shown that the court erred in so admitting the secondary evidence where there is proof *prima facie* as to search and inquiry of the proper persons, and at the proper places, as shown by the preliminary testimony, the act of the judge will not be revised. The proof must have satisfied the court that it was out of the power of plaintiffs to have produced the alleged lost documents, and their prior existence and genuineness, as prerequisite to secondary evidence of their contents. Wharton on Ev., sec. 141.

It must be remembered that the affidavit of Prendergast was principally to the fact of inquiry and search, and inability to procure the original. The execution and contents were sought to be proven otherwise, and to some extent by circumstantial evidence.

It is not to be expected that perfect proof of a first step in the technical, correct order of the introduction of the tes-

timony can be made before the second shall be taken. Diehl *v.* Ewing, 65 Pa. St., 326.

" All competent evidence in such case should be received when offered, whether in logical sequence or not, especially if followed by what would make out a complete case, if believed. When the testimony is in, it is the duty of the judge to inform the jury what is to be extracted from the body of it, in order to make out a good and valid case in law, and what effect a failure to do so would have. A party must begin his proof somewhere; and *where*, is less important, a great deal, than *its completeness.* A judge will look at the latter with great care as being of the very essence of the contest, and at the former as a desirable result rather than an essential one." 65 Pa. St., 326, cited Wharton on Ev., 142, note.

The testimony, taken in connection with the proof of inability to obtain the originals, certainly was testimony sufficient to submit the issue whether proven, to the jury as to execution and contents.

There was much testimony, chiefly circumstantial, to the existence and contents of the deeds, and the locality of the land described. If not conclusive, it is strongly persuasive, and, supported by a verdict, will be considered sufficient.

3. As to the testimony of Crout, Chaudoin, Shirley, Prendergast and Reece. This testimony related to the location of the land, and to its possession by Compton from 1855 until his death in 1863, and by his family subsequently, and of Jackson's dealings with the land, he having married Compton's widow. The testimony is as follows (substantially):

Witness Crout testified: "I got acquainted with Mrs. Compton in 1866 or 1867, then living on the land in litigation; she died there in 1869; she said she and her husband settled there as the tenants of M. Farley, but at the time I knew her she said she was holding the land for Darrington; that Darrington was to give them one hundred acres of the land to hold it for him; that when she and her husband found Farley could not make title, they ceased to hold under

him, and then wrote to Darrington, who agreed to give one hundred acres," etc.

N. G. Chaudoin testified: "I know the Darrington land and some of its lines; live in three hundred yards of it; knew Thomas Compton; he went on the land in December, 1855, and said M. Farley put him there; that Farley was to let him have land there. In 1857 Compton told me he called upon Farley for a deed to the land, and Farley could not make the deed, and I cursed him out of my house and off my land, and wrote to Darrington; Compton died on the land in 1863; his widow and children remained; she died there in 1869; she always said she was living on the Darrington half league and holding it for Darrington; she married defendant Jackson in March, 1868; I rented land from her in 1868 and paid rent to her by direction of Jackson."

L. D. Shirley testified: "I know the Darrington half league; have known it twenty-five years; it was shown to me by Compton about twenty-four years ago; Compton died in 1863; his widow lived there until her death in 1869; when Compton first settled on the land, he told me he went there for Farley, and was holding for him; I passed his house frequently and talked with him; about eight months after he went there, Compton told me he was dissatisfied with Farley's title; he said he wrote to Darrington and had an answer, and was then holding under Darrington; C. said he was holding for D.; it was generally known that C. was holding the land for D.; Compton's family remained there and held under Darrington; I know Jackson; he got possession by marrying Compton's widow; never heard of Farley claiming the land after Compton ceased holding for him."

Prendergast testified: "I had a conversation with defendant Jackson at Calvert in winter of 1874 and 1875 or of 1875 and 1876, about the Darrington land on Elm creek, in Milam county, Texas. He asked me if the land was for sale, and what it could be bought for, and if I was agent for it; I told him I was, and he asked me if I knew that Farley was claiming the land. This was the first I heard of Farley's claim."

O. M. Reece testified: "In my house in Milam county, in 1875, Jackson told me that Annie Lindsay, one of the intervenors, had acted so badly that he could not stand it, and he ordered her off the place where they had lived on Elm creek. He had told her if she did not leave he would kick her off."

It will be seen that the testimony of Crout, Chaudoin and Shirley was to the material fact of possession of the land by Compton, and explaining his tenure. Such declarations by a tenant in possession are always admissible. 1 Greenl. Ev., sec. 109, and authorities; Wharton on Ev., 1156; Abbott, Trial Ev., p. 711. The testimony also was pertinent to establish the location of what was called the Darrington land.

Prendergast's testimony was admissible against Jackson to show his dealing with witness about it, and with other testimony on the subject, in his repudiating the title he entered under and his subsequent assertion of claim under Farley.

Reece's testimony was introduced by the intervenors who are not before this court on appeal. No appeal was taken against them, nor any assignment of error made against them.

The assignments of error based on the testimony of these witnesses are not well taken.

4. The instructions complained of.

That noted in fifty-fifth assignment is as follows: "If the jury believe from the evidence that there were in existence, more than thirty years ago, deeds from S. C. Robertson to Niles F. Smith, and from Smith to John Darrington, to the land described in the petition, and you further believe that Darrington claimed said land and held possession thereof, either by himself or by a tenant, under said deeds, and paid taxes on said land, then you are authorized to presume that said deeds were executed by said Robertson and Smith." Objections: (1) There is no evidence of the existence of such deeds more than thirty years ago; and (2) It is vague, calculated to mislead the jury as to the identity of

the land described in the deeds; the time and duration of possession, and when taxes were paid, etc.

The transcript from Robertson county of the deed from Smith to Darrington showed the date of that deed to be in 1840; it recited and referred to Robertson's deed to Smith as of date two years earlier. The recitals were evidence when coupled with the testimony of possession, etc. Carver *v.* Jackson, 4 Pet., 83; Crane *v.* Lessee of Morris & Astor, 6 Pet., 610; Deery *v.* Crain, 6 Wall., 805. The original deeds were in De Cordova's possession in 1853, and then shown to surveyor, Green; the deed to Darrington was followed at once by payment of taxes. The deeds, or such as those described, were both duly recorded in Milam county. There is evidence of actual possession under the deeds by Darrington in 1858. Payment of taxes has been held *prima facie* evidence of possession. Wharton on Ev., sec. 733; Williams *v.* Hillegas, 5 Pa. St., 492.

This testimony authorized an instruction on the subject; nor is that given erroneous in its terms; nor misleading in reference to the matters urged by defendants in the exceptions taken.

The complaint in the fifty-sixth assignment is that the court charged:

"If you believe that Darrington in his life-time claimed the land described in the petition, and that E. S. C. Robertson, who took the property of S. C. Robertson under the provisions of his will read in evidence, knew of such claim, and, so knowing, has acquiesced in it for a great number of years, then you are authorized to presume that the title passed out of Robertson to Darrington by proper conveyance."

Objected to, because the acts of Robertson with Darrington subsequent to Robertson's transfer to Farley & Jewett were allowed to affect Farley's right in defense.

This instruction was given with reference to the presumption which might be drawn by the jury from the testimony, of a transfer from Robertson down to Darrington. It devolved upon plaintiffs to show title. The land was granted

to Robertson, and as against him, and for the purpose of marking out title, the testimony was tendered, and the instruction given. While the instruction is liable to criticism, because vague and indefinite, yet it was not of itself injurious to defendants. Had the defendants asked additional instruction calling attention to what, if any, effect the dealings of Robertson with Jewett & Farley might naturally have produced upon the conduct of Robertson towards the land, as a reason for not asserting ownership, such instruction should have been given. The mere omission to give it was not error.

Further error is complained of in the charge,— fifty-ninth assignment. The objectionable charge is as follows:

"If Farley, without having been in possession of the land in suit as many as three years, did, on or about the years 1857 or 1858, lose the possession, and if he has not since held the possession of the same, or paid taxes on said land or claimed title thereto until the institution of this suit, but has openly disclaimed having title; and if Darrington, claiming the south half of said league No. 2, under deeds from Robertson to Smith, and from Smith to Darrington, did, on or about the year 1853, cause said south half to be surveyed and the lines around it marked; and if he, and plaintiff since his death, have paid taxes thereon, and if, since about the year 1857 or 1858, said land has been in the possession of a tenant or tenants, notoriously claiming to hold under and for Darrington, then Farley's bond from Robertson, dated January 27, 1842, and read in evidence, has become a stale demand and barred by lapse of time, and you will find in that case for the plaintiff."

The title bond referred to bore date January 27, 1842, and made by Robertson, the grantee, to Farley & Jewett, agreeing to sell and convey, etc. It recited its consideration, "professional services in the case of Sam Houston, President, etc., v. S. C. Robertson, empresario, rendered by Massillon Farley and Henry J. Jewett, as counsel in the case aforesaid." This was a valuable consideration.

It stipulated that from certain lands Farley & Jewett

might select the agreed quantity. This selection was made February 12, 1848, and the survey of it recorded in the proper county. Compton was placed by the vendees in the possession as their tenant. The *bond* obligated Robertson, upon such selection, "to make the conveyance to the land." Farley & Jewett had, as result of these facts, "the actual possession, the right of possession, and the right of property" in this land. These constituted perfect title. 2 Kent, 373; 2 Blackstone, 195. In Robertson remained but the naked legal title; he was a mere trustee for the owners. Farley & Jewett could enforce a decree against Robertson and maintain trespass to try title against a stranger. In our courts there is equal protection for an estate, whatever be the evidence of it. Equities make rights, and in our courts are dealt with as facts, not as claims. This estate could only be destroyed by its owners; or by the proving up of title under the provisions of the laws of limitation; or by the grantor resuming possession and conveying to a *bona fide* purchaser. When asserted by one in possession, mere lapse of time would not destroy it.

Not regarding Robertson's older deed to Smith, under which plaintiffs claim, the *status* of the Farley & Jewett title is analogous to that discussed in Reed v. West, 48 Tex., 248: "If Reed had gone into possession, his equitable title would have protected him and entitled him to possession. If, on the other hand, West had repudiated the trust by selling the entire tract, or by holding possession, claiming for himself alone, then limitations would have commenced to run against plaintiffs' claim for equitable relief. Until some act indicative of an intention to hold adversely, limitations would not commence."

Independent of the elder title plaintiffs have not shown such destruction of defendants' estate in the land as would render the charge proper.

Besides, the acts done in 1853, the survey, the payment of taxes, the continued subsequent assertion of title, the disclaimer by Farley & Jewett, the acquisition by plaintiffs of possession in 1858, were, so far as they were the acts of

pläintiffs and their ancestor, referable to their older title; they were in no way a repudiation of the defendants' contract with Robertson.

The charge proceeds to direct the jury, upon finding the facts from which would result the staleness of the bond, they should find for the plaintiffs. It does not appear that the defendants asserted title by limitations, or as *bona fide* purchasers. Nor that such rights were, on the trial, asserted against them. The real defense consisted in combatting the evidence offered by the plaintiffs, and in an attempt to show that the land included in the alleged deed by Robertson to Smith did not to any material extent conflict with that selected by Farley & Jewett claimed by defendants.

The plaintiffs' *title* could receive no strength from the fact, if it were found, that the Farley & Jewett title had been abandoned.

In submitting as a basis of recovery the facts showing the invalidity of the Farley & Jewett title as against Robertson, even as aiding as a circumstance the testimony to the existence of the Smith title, the court was giving an undue prominence to the defects of the defendants' title. This charge was, therefore, improperly given.

5. There remains the additional assignment (52d) relating to the admission in evidence over objection of a contract bebetween S. C. Robertson and the defendant Farley (or Jewett & Farley).

E. C. S. Robertson's testimony is in substance by deposition: "My father made a contract with Henry J. Jewett and M. Farley, for and in consideration of their professional services in a suit then pending, of Sam Houston *v.* Sterling C. Robertson, empresario, etc., to convey to them one league of land. By the terms of the contract the said Farley & Jewett were privileged to select the whole league, or a less quantity, not less than one-quarter of a league, out of the four-league block of land on Elm creek, and the balance to make up one league, to be selected out of one of said Robertson's leagues, on String prairie, in Burleson county. Under the above contract Farley & Jewett did select about

one thousand six hundred and eighty-three acres out of
the four-league block on Elm creek, beginning at a south-
western corner of said Robertson's four-league block of
land on Elm creek, at a point bearing south nineteen
degrees west from James Reed's northeast corner of a
league survey, and in James Reed's east line, marked A
on annexed plot No. 2; thence north nineteen degrees east,
to northeast boundary line of said Robertson's four-league
survey; thence south seventy-one degrees east far enough,
running down in the same direction with Elm creek, to in-
close one thousand six hundred and eighty-three. acres;
thence south nineteen degrees west to the southwest bound-
ary line of said four-league survey, and with the same to the
beginning. They also selected two thousand seven hundred
acres in Burleson county. As the consideration for which
my father had agreed to convey the above described land
had failed, I refused to make title. On or about the 2d
day of October, 1851, Farley & Jewett brought suit against
me in the probate court of Milam county for a decree of
title, to which I pleaded want of consideration, etc. This suit
was continued from term to term without prosecution —
being ready myself to answer further in the matter — until
the 3d day of March, 1859, when I entered into the follow-
ing agreement with Farley & Jewett, in words as follows, to
wit: This agreement, made and entered into this 13th day
of March, 1859, by and between E. Sterling C. Robertson,
of Bell county, of the first part, and Massillon Farley, of
Bell county, Texas, and Henry J. Jewett, of Leon county,
all of the state of Texas, of the second part, witnesseth:
That for the consideration hereinafter stated, the said party
of the first part doth hereby agree and bind himself, his
heirs, executors and administrators, to make and deliver to
said party of the second part a good and valid deed for one-
half league of land, situated in Burleson county, Texas, on
String prairie, said league being one of the premium or
selected leagues of Sterling C. Robertson, deceased, and said
league, so soon as practicable, to be divided into two equal

parts, as near as may be of the same value, having regard to quantity and quality of land. And said party of the first part also agrees to make the deed for the aforesaid land in this manner: A deed to one-fourth of the land, when divided, to Henry J. Jewett, and for the other fourth a deed to Massillon Farley, said deed being more fully identified as the same on which said Farley & Jewett made a selection of land, by virtue of a certain deed to them executed by the late Sterling C. Robertson, and recorded in Burleson county for a league of land, reference to which may be had. And the said parties of the second part, in consideration of the premises, do hereby bind themselves, their heirs, executors and administrators, to release and forever acquit and discharge the estate of Sterling C. Robertson, deceased; also in like manner to discharge and release said party of the first part from all claim, demand or lien which said Farley & Jewett may have or derive from a deed for one league of land, executed and delivered to them by said Sterling C. Robertson, deceased, in consideration of professional services rendered by said parties of the second part in the matter of his suit against the republic of Texas, for the recovery of land to which he was entitled as empresario, said deed being recorded in Burleson county. And this agreement shall operate to discharge said party of the first part from all claim or lien held by said Farley & Jewett, by virtue of the deed aforesaid, upon the execution and delivery of deeds for the one-half league of land aforesaid as hereinbefore stated. In testimony whereof, the parties of the first part and of the second part have hereto set their hands and scrolls for seals, this the day and date above written. In duplicate.

(Signed)    "MASSILLON FARLEY,    [SEAL]
"By his Attorney, HENRY J. JEWETT.
"HENRY J. JEWETT.    [SEAL]
"E. STERLING C. ROBERTSON.    [SEAL]

"Signed, sealed and delivered in presence of W. Y. McFarland and W. H. White."

In connection with this testimony, J. M. Henderson, for

defendant, testified: "In 1859 or 1860 Farley told me he did not have title to the land and could not make me a deed to it."

W. V. Heffley testified that about 1859 "he had a conversation with Farley about buying some of this land on Elm creek, and he said he had given up all claim to it; that he had taken land in another place. I asked him what he would do with Compton, and he replied that Darrington would take care of him and give him a home."

It had been proven that Darrington had paid the taxes on the land for 1851, 1852 and 1853, and ever since, except for nineteen years. Payment of taxes has been held *prima facie* proof of possession. Williams *v.* Hillegas, 5 Pa. St., 492. The land was granted to S. C. Robertson, and it was shown that Compton had been placed by Farley on the land as tenant in 1855, and that in 1857 Compton had repudiated the tenancy, and from that time up to the marriage of Jackson with the widow of Compton, Compton and his widow *had occupied* the land under Darrington. Compton died in 1863, and his widow and Jackson intermarried in 1868. The testimony as to the locality of the land, as described by the deed, was conflicting.

From the entire testimony it cannot be said that the contract of rescission contained in the testimony of E. S. C. Robertson was necessarily an important fact in the case. Its importance, however, was *magnified* in the erroneous charge just discussed. Still as the testimony appears to have been secondary, and was objected to as such, its admission is presented directly for revision.

In Eborn *v.* Zimpelman, 47 Tex., 503, the case was reversed upon the improper admission of testimony to the genuineness of certain promissory notes bearing date in 1846, when the case was decided upon the genuineness of a document of date 1871; the court holding: "As we cannot say that the improper evidence did not operate to plaintiff's prejudice, this error entitles plaintiff to a reversal."

To this assignment appellee replies that the execution of this contract of rescission was not in issue by a denial under

oath. Such condition would obviate the necessity of proving its execution, it having been pleaded, but does not dispense with its production. Matossy *v.* Frosh, 9 Tex., 613. It was error to admit the copy. With the charge upon the importance of the facts avoiding defendants' title, it cannot be known that this error was not injurious to defendants.

For the erroneous instruction discussed, and the admission of the secondary evidence, the judgment should be reversed.

REVERSED AND REMANDED.

[Opinion delivered November 29, 1880.]